## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO. : 07-204 (CKK)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **PATRICK SYRING,** | **:** | |
| **Defendant.** | **:** | |
| | **:** | |
| | **:** | |

## GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE DEFENDANT'S HEARSAY STATEMENTS

The United States of America, by and through the undersigned counsel, respectfully requests the Court to rule *in limine* to exclude certain out-of-court statements by the Defendant as hearsay, as set forth below.

## DISCUSSION

### I.    Factual Background

Defendant Patrick Syring is charged with one count of interference with a federally protected right, 18 U.S.C. § 245(b)(2)(C), and one count of transmitting interstate threats, 18 U.S.C. § 875(c). The charges arise from four emails and three voice mails received by the Arab American Institute (AAI) on July 17-19, 2006, and July 29, 2006.[1]

On October 4, 2006, Defendant spoke voluntarily at his place of employment with agents of the Federal Bureau of Investigation. In that interview, Defendant made several inculpatory statements. Defendant admitted sending each of the emails and voice mails, and acknowledged sending them with intent to intimidate. See Exhibit 1, Form FD-302, October 4, 2006. In

---

[1]The United States incorporates by reference the entirety of Defendant's communications, as set forth in the indictment; for brevity's sake, they are not repeated here.

- 2 -

relevant part, Defendant stated that:

1.  He is the subscriber to the email addresses from which the emails were transmitted, and does not share those addresses with anyone else;

2.  He admitted sending the first email, dated July 17, 2006;

3.  When asked to explain what he meant by the statement, "the only good Lebanese is a dead Lebanese," Syring stated he was trying to intimidate Dr. Zogby

4.  When asked why he referred to Lebanese people, Syring stated it was his understanding that Zogby was Lebanese, and he wanted his statement to reflect that;

5.  Syring admitted sending the second email, dated Wednesday, July 19, 2006, to Valerie Smith.

6.  Syring selected Valerie Smith's name at random from the AAI website, and believed that by sending the email to a staff member, it would be relayed to Zogby;

7.  By writing "The only good Lebanese is a dead Lebanese" to Valerie Smith, Syring was trying to intimidate Dr. Zogby;

8.  Syring denied drinking alcohol, consuming illegal drugs, or using prescription medication during the writing of any of the emails;

9.  Syring admitted sending the third email, dated July 19, 2006, to Rebecca Abou-Chedid;

10. Syring chose Rebecca Abou-Chedid's name randomly from the AAI website.

11. Syring expected that if Abou-Chedid received that email, she would forward it to

- 3 -

Dr. Zogby who would read it;

12.     Syring sent the third email, dated July 19, 2006, to Abou-Chedid, as an act of intimidation toward Dr. Zogby;

13.     Syring selected the recipients of the fourth email, dated July 29, 2006, in a random manner;

14.     Syring thought that if he sent the fourth email to more than one email address, it had a better chance of reaching Dr. Zogby;

15.     Syring knew that Dr. Zogby was Lebanese because Syring heard Dr. Zogby mention that he was Lebanese during interviews on television;

16.     When the agent played a recording of the first voice mail, which was left on July 17, 2006, Syring indicated, "that was me," admitted making that telephone call minutes before sending the first email;

17.     Syring looked up the telephone number of the AAI by logging onto the AAI website;

18.     Syring called the number for the AAI from his residential telephone number;

19.     When asked to explain his comment conveyed in the first voice mail that "The only good Lebanese is a dead Lebanese, the only good Arab is a dead Arab, and death to Lebanon and death to the Arabs," Syring stated he was trying to intimidate Dr. Zogby;

20.     Syring admitted that he sent the second voice mail, which was left on the AAI answering machine on or about July 18, 2006 , indicating, "that was me."

21.     Syring admitted leaving the second voice mail shortly before he sent an email to

- 4 -

Valerie Smith on July 19, 2006, because he wanted the message to get to Zogby

22.    Syring admitted that, by stating in the second voice mail that "[t]he only good Arab is a dead Arab," he was trying to intimidate Dr. Zogby;

23.    Syring admitted leaving the second and third voice mails on AAI's answering machine, and stated that, for each of them, he placed the call from his residence to the same telephone number for the first voice mail;

24.    Syring confirmed the location of his residence.

In the same interview, Defendant made other statements indicating he did not intend to cause actual harm to the recipients.  Further, Syring made other statements concerning his political beliefs.  As will be discussed below, unlike the statements listed above, these statements are not admissions of a party-opponent and are therefore hearsay.  These statements include that:

1.    Prior to sending the first email, Syring had seen Dr. James Zogby on television;

2.    That Syring believed Zogby had a pro-Arab, anti-Israeli viewpoint, and this was upsetting to Syring;

3.    Syring felt he was expressing his political opinion, and at no time did he feel that he was threatening anyone or doing anything wrong;

4.    In stating, "the only good Lebanese is a dead Lebanese," Syring did not intend to hurt Dr. Zogby;

5.    Syring realized, at the time he made the above statement, and at the time of the interview, that he was exaggerating a bit;

6.    Syring has never thought of hurting anyone affiliated with Zogby's organization;

7.    Zogby sent the second email, dated Wednesday, July 19, 2006, to Valerie Smith,

- 5 -

after seeing Dr. Zogby's name mentioned during a television broadcast, and that Zogby's statements upset Syring and Syring wanted to tell Dr. Zogby he believed his statements were wrong;

8.    Syring felt that the second email was a political statement and he did not intend to hurt Smith;

9.    By writing "the only good Lebanese is a dead Lebanese" to Valerie Smith, Syring was only trying to intimidate Dr. Zogby, and not harm Zogby or Smith in any way;

10.    Syring believed that the text of the third email he sent, dated July 19, 2006, to Rebecca Abou-Chedid, was a political statement;

11.    Syring believed that Dr. Zogby was vile or evil;

12.    Syring did not intend to send the third email; dated July 19, 2006, as a threat toward Abou-Chedid or Zogby;

13.    Syring recalled watching a BBC broadcast or ABC's Nightline television show concerning a murder that occurred on July 28, 2006 in Seattle, in which at Arab man walked into an office of the Jewish Federation and shot and killed a staff member there;

14.    Syring felt that organizations like the AAI are indirectly behind the killings of Jews everywhere;

15.    Syring felt that the United States would be safer without Dr. Zogby;

16.    Syring left the first voice mail, dated July 17, 2006, for the same reasons that he left the first email, described above, including that he was upset by what he heard

- 6 -

Dr. Zogby say on television;

17. Syring believes Dr. Zogby is anti-Semitic and anti-American; admitted transmitting the emails and voice mails that are enunciated in the indictment, and admitted sending them with intent to intimidate.

18. When asked to explain his comment conveyed in the first voice mail that "The only good Lebanese is a dead Lebanese, the only good Arab is a dead Arab, and death to Lebanon and death to the Arabs," Syring stated he never had any intent for Dr. Zogby to die.

19. Syring stated that the first voice mail was "a political message" and he was angry when he left it;

20. When asked what he meant by stating in the second voice mail that "[t]he only good Arab is a dead Arab," Syring stated he had no intentions of harming Dr. Zogby or Valerie Smith.

In this motion, the United States moves to exclude any reference at trial (either on direct or cross-examination) to the aspects of the out-of-court statements by Syring that he did not intend to cause harm and did not feel that he was threatening anyone or intend to threaten anyone. The United States further moves to exclude any reference at trial (either on direct or cross-examination) to the aspects of Syring's out-of-court statements discussing his political beliefs.

This ruling is necessary because the statements are not inculpatory or admissions; thus, they are hearsay. Further, as discussed below, even if the statements were not hearsay, they are not relevant to the issue whether defendant is guilty of the crime charged. Thus, neither Rules

- 7 -

106, 611(a), nor 807 require that these statements be presented at trial. Of course, the defendant remains free to choose to testify to this version of events in his case-in-chief, subject to cross-examination.

## II.    Argument

### A.    The Proposed Redactions are Necessary Because the Statements are Inadmissible Hearsay

There is no provision in the Federal Rules of Evidence that allows the introduction of the statements for which the government seeks exclusion. As set forth below, neither Federal Rules of Evidence 801, 804, 106, 611, nor the case law, provide any authority upon which these statements are admissible. As such, the Court should grant the Government's motion.

"Hearsay is not admissible except as provided by the [Federal Rules of Evidence] . . . ." Fed. R. Evid. 802. Federal Rule of Evidence 801(d)(2) provides, in pertinent part, that a statement is not hearsay if it is "offered against a party and is (A) the party's own statement." Federal Rule of Evidence 804(b)(3) provides that in the case of a declarant that is unavailable for trial, statements against the defendant's pecuniary or proprietary interest, or "so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true" interest are admissible. Fed. R. Evid. 804(b)(3).

Because the redactions sought do not concern admissions and are not inculpatory, they remain outside the scope of Rules 801(d)(2) and 804(b)(3). They are thus out-of-court statements of the Defendant if offered for their truth, and are hearsay under Rule 802.

- 8 -

**B.      There is No Federal Rule of Evidence Under Which Syring's Hearsay Statements May be Properly Admitted**

Moreover, there is no other provision in the Rules that allows the admissibility of Syring's statements.  The proposed redactions are of statements that are not relevant, and thus may not be properly considered by a jury.  Accordingly, there is no interest of fairness or ascertainment of the truth as embodied in Federal Rules of Evidence 106 or 611 that would be served by the admission of the statements.

Syring's statements regarding whether he intended to harm anyone are not admissible under Federal Rule of Evidence 401, because they are not relevant. As this Court recognized in its opinion denying Defendant's motion to dismiss, it is "entirely irrelevant whether or not Defendant had any intent to actually inflict harm upon the AAI employees to whom he directed his communications." — F. Supp. 2d —, 2007 WL 4105545, at *7 n.5 (D.D.C. Nov. 19, 2007) (citing Virginia v. Black, 538 U.S. 358, 360 (2003)).

Further, Syring's statements regarding whether he *felt* he was threatening anyone, or whether he *subjectively intended* to threaten anyone, are not relevant.  As this Court recognized, courts "have generally applied an objective standard" in determining whether a communication is a true threat. Id. at *7 (citing Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists, 290 F.3d 1058, 1075 n.7 (9th Cir. 2002) (collecting cases)).  As such, "courts in all jurisdictions consider whether a reasonable person would consider the statement a serious expression of an intent to inflict harm, although the circuits disagree on whether the proper perspective is that of a 'reasonable listener' or a 'reasonable speaker.'" Id. at *7 (internal citations omitted).  Thus, as recognized by this Court, even under the reasonable speaker standard, the Defendant's statements regarding his subjective feeling or belief that he was not

- 9 -

threatening anyone are not relevant to the issue whether Defendant made a true threat.  Even if the jury is asked to apply the standard of that of whether a reasonable speaker should have objectively believed the messages are a threat, such comments by Syring are not relevant and are not meaningful to the determination of the issues in this case.

Finally, Syring's statements concerning his political beliefs toward Dr. Zogby and AAI are not relevant.  As the Court noted in its ruling discussed above, "a threatening communication melded with some form of political expression . . . does not constitute protected speech simply because there is a political idea attached." Id. at *12 (citing United States v. Polson, 154 F. Supp. 2d 1230, 1235 (S.D. Ohio 2001); United States v. Bellrichard, 994 F. 2d 1318, 1322 (8th Cir. 1993)).

Thus, Syring's statements that he did not intend to cause harm to the recipients, did not feel he was threatening anyone or subjectively intend to threaten, and believed he was expressing political opinion are not relevant to the issues in the case.  They are not exculpatory under the case law, because they do not make it any less likely that Syring committed the crimes charged.  As such, because these statements are not relevant, there is thus no interest in fairness or ascertainment of the truth that is implicated by them.  There is, therefore, no basis under Rule 106, 611(a), or 807 that justifies their admission.

Federal Rule of Evidence 106, also known as the rule of completeness, provides that:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement **which ought in fairness to be considered contemporaneously with it**.

Fed. R. Evid. 106 (emphasis added).  The Advisory Committee note to Rule 106 states that

- 10 -

"[t]he rule is based on two considerations. The first is to correct a misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial." Fed. R. Evid. 106.[2]  According to the D.C. Circuit, "[i]n addition, the provision of Rule 106 grounding admission on 'fairness' reasonably should be interpreted to incorporate the common-law requirements that the evidence be relevant, and be necessary to qualify or explain the already introduced evidence allegedly taken out of context." United States v. Sutton, 801 F.2d 1346, 1369 (D.C. Cir. 1986) (citing United States v. McCorkle, 511 F.2d 482, 486-87 (7th Cir.) (en banc), cert. denied, 423 U.S. 826, (1975)).  "Application of the rule of completeness is a matter for the trial judge's discretion," United States v. Washington, 12 F.3d 1128, 1137 (D.C. Cir.), cert. denied, 513 U.S. 828 (1994).  Further, although

The statements the United States seeks to exclude are not covered by the rule of completeness, particularly given the instruction of the D.C. Circuit in Sutton.[3]  As discussed above, Syring's statements that he did not intend to harm anyone, did not subjectively intend to threaten anyone, and of political belief are not relevant to the issues in the case; thus, they are not implicated by the fairness considerations of the rule.  Further, these statements to not "qualify" or "explain . . . already introduced evidence allegedly taken out of context," Sutton,

---

[2]The Advisory Committee notes further restrict the rule as "limited to writings and recorded statements," clarifying that it "does not apply to conversations." Fed. R. Evid. 106. Thus, in a technical sense Rule 106 does not apply to Defendant's statements to the agents. Some courts have held that Federal Rule of Evidence 611(a), which allows that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth," codifies the common law rule of completeness as to oral statements, and applies the same analysis as that given to Rule 106. E.g. United States v. Shaver, 89 Fed.Appx. 529, 532 (6th Cir. 2004) (citing J. Weinstein and M. Berger, Evidence, ¶ 106[01] (1986)).

[3]

- 11 -

801 F.2d at 1369.  The statements sought to be excluded do not, as discussed above, make

defendant any less culpable of the conduct that he admits having undertaken.  Defendant's

statement, for example, that he did not believe he was threatening anyone, in no way modifies or

provides context to defendant's admission that he acted with intent to intimidate.  Syring's

admissions of intent to intimidate are complete thoughts, and they are not undermined or limited

in any fashion by the defendant's statements of his subjective belief that he was not threatening

anyone.  Further, Syring's statements of political belief do not provide meaningful context to his

admissions.  As this Court has ruled, the fact that a defendant believed he was expressing

political beliefs does not bear upon the issue whether a communication is a true threat.  Thus,

because these statements are not relevant, they do not provide a context for the defendant's

admissions.  Accordingly, the considerations of fairness that the rule of completeness protects

are not implicated by excluding the statements because they are hearsay and are not relevant.[4]


**CONCLUSION**

For the reasons discussed above, the United States respectfully requests the Court to

grant this motion in limine.

---

[4] Accord United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2004) ("When the defendant
seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it
is not admissible . . . [unless it is] needed, in fairness, to make complete the portions of his
statement that were admitted against him."); Shaver, 89 Fed. Appx. at 531 (refusing to permit
cross-examination of testifying agent as to hearsay statements by defendant that were not
inculpatory);  United States v. Guevara, 277 F.3d 111, 127 (2d Cir.), modified on other grounds
by 298 F.3d 124 (2002) (holding that, barring a relevant hearsay exception, Rule 106 or the
completeness doctrine does not permit introduction of non-inculpatory hearsay); United States v.
Wilkerson, 84 F.3d 692, 696 (4th Cir. 1996) (finding that Federal Rules of Evidence 801-804
concerning hearsay "do not provide an exception for self-serving, exculpatory statements made
by a party which are being sought for admission by that party").

- 12 -

Respectfully submitted,
JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

RENA J. COMISAC
ACTING ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION


_____
Julieanne Himelstein (Bar # )
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530


_____
Mark Blumberg
Special Litigation Counsel
Karen Ruckert
Trial Attorney
United States Department of Justice
Civil Rights Division
601 D Street, NW Fifth Floor
Washington, D.C. 20004

- 13 -

Exhibit 1

FD-302 (Rev. 10-6-95)

-1-

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription     10/05/2006

    William Patrick Syring, born ▮▮▮▮▮, residential address ▮▮▮▮▮▮▮▮▮▮▮ telephone number ▮▮▮▮▮▮▮▮▮▮▮, was interviewed at his place of employment, U.S. Department of State, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, office telephone number ▮▮▮▮▮▮▮▮▮. Syring was initially telephoned by Agent Bristol asking to meet with him outside his place of employment. Syring requested that Agent Bristol come to his office. After being advised of the identity of the interviewing Agents and the nature of the interview, Syring provided the following information:

    Syring was told by Agent Bristol that the Federal Bureau of Investigation (FBI) was investigating him for a civil rights violation involving threatening e-mails and telephone calls by Syring to an Arab American organization in Washington, D.C. Syring was told that he was not in custody and he was free to leave at any time. Agent Bristol informed Syring that the FBI was willing to interview him elsewhere, but Syring advised that his office was fine (interview was done in an adjacent conference room). Syring advised that he was willing to answer any questions but he did not want to sign anything.

    Syring was told that the FBI was investigating several threatening e-mails and telephone calls sent to the Arab American Institute, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in July 2006. Syring was asked if he is the subscriber to e-mail addresses' pat1425@hotmail.com and pat1425@yahoo.com. Syring stated that he was. When asked if anyone else lived with him at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ he replied no. Syring advised that he did not share those e-mail addresses with anyone else. Syring stated that he had a third e-mail address of pat1425@gmail.com.

    Agent Bristol advised Syring that the FBI would like to review four e-mails believed sent by Syring to the Arab American Institute, along with three telephone call messages, to see why he wrote and said what he did. Syring advised he would have no problem with that.

| | | |
|---|---|---|
| Investigation on | 10/4/06 | at Washington, D.C. |

File # 44B-WF-234426              Date dictated

      SA Dan Parker

by   SA Greg H. Bristol:ghb

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

44B-WF-234426

Continuation of FD-302 of __William Patrick Syring__ , On 10/4/06 , Page 2

      Syring advised that he has a Toshiba lap top computer at his residence which he uses for e-mail transmissions. He did not subscribe to any internet company but uses "wireless internet" from a connection that a neighbor has with Comcast cable.

      Syring was shown a one page document captioned "Threatening emails received by the Arab American Institute, FBI 44B-WF-234426, Email 1, 7/17/06, 11:21PM," which included the following e-mail message:

From:       Pat_1425@hotmail.com

Sent:       Monday, July 17, 2006, 11:21PM

To:       James Zogby; Natasha Tynes

Subject:  James Zogby's statements on MSNBC website (July 17)

Text:      Zogby's anti-Semitic, anti-American statements (and those of the AAI in general) are abhorrent, repulsive and disgusting. The only good Lebanese is a dead Lebanese (as the IDF knows and is carrying out in its security operations, God bless them.) Fuck the Arabs and Fuck James Zogby and his wicked Hizbollah brothers. They will burn in hellfire on this earth and in the hereafter.

      This e-mail text was read out loud by Agent Bristol. Syring admitted sending that e-mail to James Zogby, who he was disgusted with. Just before sending that e-mail, Syring saw Zogby on a television show giving an interview about the 2006 Israel-Lebanon conflict, perhaps on channel 56 or the BBC channel. Syring could not recall if the show was on tape or it was a live show, but he thought it was around 11:00PM. During the television interview, Zogby discussed his interpretation of that conflict. Syring thought Zogby had a pro Arab, anti Israeli viewpoint, which upset him (Syring). Syring wanted to let Zogby know how he felt, so he decided to send him an e-mail. From his residence in Arlington, Virginia, Syring "google" searched Zogby's name, and found the website of the Arab American Institute, in Washington, D.C.

FD-302a (Rev. 10-6-95)

44B-WF-234426

Continuation of FD-302 of   William Patrick Syring   , On 10/4/06   , Page   3

        When asked why he decided to also send the e-mail to
Tatasha Tynes, Syring stated there was no specific reason. When
looking at their website, he saw several names of employees who had
e-mail addresses, and he randomly selected Tynes' name because he
wanted to make sure his message got to Zogby. When asked if he had
ever met Zogby or Tynes, Syring stated he had not; however, he
noted that Zogby was "out in the public spotlight" often.

        Syring emphasized that he felt he was expressing his
political opinion, and at no time did he feel he was threatening
anyone or doing anything wrong. When asked to explain his
statement that the "only good Lebanese is a dead Lebanese," Syring
stated that he was only trying to intimidate Zogby, not hurt him,
and realized then and now that he exaggerating a bit. Syring
expanded his explanation by saying that he has never thought of
hurting anyone affiliated with Zogby's organization. Syring
advised that he was not part of any group that wanted to hurt
Arabs. When asked why he used the Lebanese reference, Syring
stated that it was his understanding that Zogby was Lebanese, and
he wanted his statement to reflect that.

        Syring was shown a one page document captioned
"Threatening emails received by the Arab American Institute, FBI
44B-WF-234426, Email 2, 7/19/06, 12:32AM," which included the
following e-mail message

        From:      Pat_1425@hotmail.com

        Sent:      Wednesday, July 19, 2006, 12:32AM

        To:        Valerie Smith

        Subject:   URGENT: Emergency Summit Registration for July 19

        Text:      You are a fucking anti-Semitic Arab-American
                   stooge who sympathizes with Hezballah terror.
                   You and your Arab American Institute fuckers
                   should burn in the fires of hell for eternity.
                   The IDF is bombing Lebanon back into the stone
                   age where it belongs. Arabs are dogs. Long
                   live the State of Israel. Death to Arab
                   American terrorists. The only good Lebanese is
                   a dead Lebanese.

FD-302a (Rev. 10-6-95)

44B-WF-234426

Continuation of FD-302 of    __William Patrick Syring__    , On __10/4/06__    , Page    4

      This e-mail text was read out loud by Agent Bristol. Syring admitted sending that e-mail to Valerie Smith, after seeing Zogby's name mentioned during a television broadcast discussing the 2006 Israel-Lebanon conflict. Zogby's statements upset Syring. Syring thought Zogby's statements were wrong, and he wanted to tell him that.

      Syring then got onto his computer, pulled up the Arab American Institute website, and randomly selected the e-mail address of Valerie Smith, whose position at the Arab American Institute he could not recall. Syring thought if he sent his e-mail to another staff member, it would be relayed to Zogby. Syring stated that he felt his e-mail was a political statement and he never intended to hurt Smith, who he has never met.

      Syring advised that he feels strongly on his statements, including that groups like Arab American Institute sympathize with Hezbollah terror. When he wrote "The only good Lebanese is a dead Lebanese" to Valerie Smith, he was trying to intimidate Zogby, not harm him or her in any way.

      Syring denied drinking alcohol during the writing of this e-mail transmission or any of the others. Syring denied consuming illegal drugs or any prescription medication during that same period.

      Syring was shown a one page document captioned "Threatening emails received by the Arab American Institute, FBI 44B-WF-234426, Email 3, 7/19/06, 12:35AM," which included the following e-mail message:

From:     Pat_1425@yahoo.com

Sent:     Wednesday, July 19, 2006, 12:35AM

To:       Rebecca Abou-Chedid

Subject:  Information for Arab Americans

Text:     You are a fucking Arab American terrorist, a
           Hezbollah sympathizer pig. James Zogby is a
           vile evil-Semitic pig terrorist member of
           Hezbollah who is attempting to destroy the
           State of Israel. God Bless America
           God Bless the State of Israel
           The only good Lebanese is a dead Lebanese.
           http://us.i1.yimg.com/us.yimg.com/i/mesg/tsmileys2/01.gif

FD-302a (Rev. 10-6-95)

44B-WF-234426

Continuation of FD-302 of ___William Patrick Syring___ , On 10/4/06 , Page __5__

     This e-mail text was read out loud by Agent Bristol. Syring admitted sending that e-mail to Rebecca Abou-Chedid, who he didn't know. Syring picked Rebecca Abou-Chedid's name randomly off the Arab American Institute's website, which listed several e-mail addresses of staff members. It was his expectation that if she got an e-mail like this, she would forward it Zogby who would read it. Syring stated the text of the e-mail was his political statement, and he still felt that members of Hezbollah are terrorists. Syring opined that Zogby was vile and evil. In regards to his "The only good Lebanese is a dead Lebanese" comment, Syring stated that he sent it as an act of intimidation toward Zogby, not as a threat toward Rebecca Abou-Chedid or Zogby.

     Syring was shown a one page document captioned "Threatening emails received by the Arab American Institute, FBI 44B-WF-234426, Email 4, 7/29/06, 12:13AM," which included the following e-mail message:

From:     Pat_1425@yahoo.com

Sent:     Saturday, July 29, 2006, 12:13AM

To:     James Zogby; Helen Samhan; ▇▇▇▇▇▇▇
       Valerie Smith; Rebecca Abou-Chedid

Subject:  AAI murders in Seattle on July 28

Text:     I condemn James Zogby and the AAI for perpetrating the murder and shootings at the Jewish Federation in Seattle on Friday July 28 (as well as the killings in Israel). You wicked evil Hezbollah-supporting Arabs should burn in the fires of hell for eternity and beyond. The United States would be safer without you.
       God Bless the State of Israel
       God Bless America

       Sincerely,

       Patrick in Arlington, VA

     This e-mail text was read out loud by Agent Bristol. Syring admitted sending that e-mail to James Zogby, and the other names listed above. Syring recalled watching a BBC broadcast that night, perhaps on channel 22, Maryland Public TV, or ABC's Nightline show,

FD-302a (Rev. 10-6-95)

44B-WF-234426

Continuation of FD-302 of ___William Patrick Syring___ , On _10/4/06_ , Page ___6___

which starts at 11:30PM, which discussed the murder that occurred on 7/28/06 in Seattle, in which an Arab man walked into an office of the Jewish Federation, and shot and killed a staff member there.

    When asked by Agent Bristol whether he thought the Arab American Institute was involved in that shooting in anyway, Syring stated not directly, but he did feel that organizations like the Arab American Institute are indirectly behind the killings of Jews everywhere. Syring does feel the United States would be safer without Zogby.

    Syring selected the other names on the above e-mail's "to" line from the Arab American Institute's website, in a random manner. Syring thought that if he sent it to more than one e-mail address, it had a better chance of reaching Zogby. In addition to never meeting Zogby, Smith and Abou-Chedid, he has never met Helen Samhan and Nidal Ibrahim.

    When asked by Agent Bristol how Syring knew that Zogby was Lebanese, Syring stated that he has heard Zogby mention that he was Lebanese during interviews on the television. When asked if he has gone to any other Arabic website, Syring advised that he might have checked out one or two of them. He did recall going to the Council of American-Islamic Relations (CAIR) website to learn what they were about, but he was not sure if he sent them an e-mail.

    The only response that Syring received from the Arab American Institute, was an e-mail he received stating that if he continued sending them e-mails they would notify the FBI. Syring did not recall who sent him that e-mail.

    Agent Bristol gave Syring an 8x14 excel spreadsheet captioned "Verbatim of e-mails and phone messages, printed 10/2/06 by GHB," which contained a time line of Syring's four e-mails and three telephone calls. Agent Bristol then told Syring that three telephone messages were received at the Arab American Institute's office, which were believed to have been made by him. Agent Bristol advised that he would read the threatening telephone phone message, and asked Syring to "follow along" on the 8x14 spreadsheet.

FD-302a (Rev. 10-6-95)

44B-WF-234426

Continuation of FD-302 of ___William Patrick Syring___ , On 10/4/06 ___, Page ___7___

     Agent Bristol then read out loud the following telephone message that was written on this 8x14 spreadsheet, known as "Threatening phone message #1 of 3," which was believed to have been sent to the Arab American Institute on or about 11:17PM, 7/17/06:

> "Hi this is Patrick Syring. I just read Jimmy Zogby's statements online on the MSNBC website, and I condemn him for his anti-Semitism and anti-American statements. The only good Lebanese is a dead Lebanese. The only good Arab is a dead Arab. Long live the IDF. Death to Lebanon and death to the Arabs."

Agent Bristol then played a CD labeled:

| | |
|---|---|
| Lab #: | 060920250ZB |
| Case ID: | 44B-WF-234426 |
| Date: | 9/28/06 |
| Description: | Duplicate copy of Q1 - standard audio format |

    The following was heard by Agents Bristol and Parker, along with Syring:

> "Old messages. Messages delivered at 11:17PM, Monday, July 17th. To listen, press 0. Hi this is Patrick Syring. I just read Jimmy Zogby's statements online on the MSNBC website, and I condemn him for his anti-Semitism and anti-American statements. The only good Lebanese is a dead Lebanese. The only good Arab is a dead Arab. Long live the IDF. Death to Lebanon and death to the Arabs."

    After Agent Bristol pressed "pause" on the CD player, Syring was asked if that was a true recording of the telephone message that he left on the Arab American Institute answering machine on or about 7/17/06. Syring stated that it was, indicating "that was me." Syring said he made that telephone call minutes before sending "E-mail #1," after watching Zogby on the television and getting upset by what he heard, for the same reasons as explained above.

FD-302a (Rev. 10-6-95)

44B-WF-234426

Continuation of FD-302 of ___William Patrick Syring___ , On 10/4/06 , Page 8

     Syring stated he looked up the telephone number of the Arab American Institute by logging onto the Arab American Institute's website, a number which he does not recall.  He then called it from his residential telephone number of ████████████  Syring continues to believe that Zogby is anti-Semitic and anti-American.

     When asked to explain his verbal comment "The only good Lebanese is a dead Lebanese, the only good Arab is a dead Arab, and death to Lebanon and death to the Arabs," as heard in the 7/17/06 recording, Syring stated that he was trying to intimidate Zogby, and never had any intent for him to die.  Syring expanded by saying the message was "a political message," and he was angry when he left it.

     Agent Bristol then read out loud the following telephone message that was written on this 8x14 spreadsheet, known as "Threatening phone message #2 of 3," which was believed to have been sent to the Arab American Institute on or about the late evening of 7/18/06:

         "Hello Valerie you fucking Arab American shit. Ah...James Zogby and you are all Hezbollah supporters. The only good Arab is a dead Arab ...you God damn bitch."

     Agent Bristol then pressed "play" on the CD player, and the following was heard by Agents Bristol and Parker, along with Syring:

         "To delete press star...8:09AM, Wednesday, July 19. Rebecca, it's a hate message...Hello Valerie you fucking Arab American shit. Ah...James Zogby and you are all Hezbollah supporters.  The only good Arab is a dead Arab...you God damn bitch."

     After Agent Bristol pressed "pause" on the CD player, Syring was asked if that was a true recording of the telephone message that he left on the Arab American Institute answering machine on or about 7/18/06.  Syring stated that it was, indicating "that was me."  Syring opined that he left the phone message shortly before he sent Valerie Smith an e-mail on 7/19/06, at 12:32AM, because he wanted the message to get to Zogby.

FD-302a (Rev. 10-6-95)

44B-WF-234426

Continuation of FD-302 of ___William Patrick Syring___ , On 10/4/06 , Page 9

     When asked what he meant by "The only good Arab is a dead Arab," Syring stated that he was trying to intimidate Zogby, and had no intentions of harming Zogby or Smith. Syring stated that he made that telephone call from his residence, to the same telephone number that he used in "Threatening phone message #1 of 3."

     Agent Bristol then read out loud the following telephone message that was written on this 8x14 spreadsheet, known as "Threatening phone message #3 of 3," which was believed to have been sent to the Arab American Institute on or about the evening of 7/19/06:

> "Hello, I'm Patrick...I'm in Arlington, Virginia, and I think James Zogby is worse than Osama bin Laden. Since he supports Hezbollah, he's an anti-Semitic mother-fucker, and the only good Arab is a dead Arab."

     Agent Bristol then pressed "play" on the CD player, and the following was heard by Agents Bristol and Parker, along with Syring:

> "To delete press star D...message delivered at 11:32PM, Wednesday, July 19th. To listen, press zero. Hello, I'm Patrick...I'm in Arlington, Virginia, and I think James Zogby is worse then Osama bin Laden. Since he supports Hezbollah, he's an anti-Semitic mother-fucker, and the only good Arab is a dead Arab. Message C, skip."

     Agent Bristol then asked Syring if that was a true recording of the telephone message that he left on the Arab American Institute answering machine on or about 7/19/06. Syring stated that it was, and he made that telephone call from his residence.

     When asked by Agent Bristol whether he felt Zogby was trying to "overthrow" the government of Israel, Syring stated that he did not know; however, he definitely thought Zogby was anti-Israel.

     When asked by Agent Bristol whether he had sent any other e-mails to the Arab American Institute before the aforementioned 7/17/06 email, Syring stated perhaps, but not more than one or two, of which he could not recall the contents of the e-mails.

FD-302a (Rev. 10-6-95)

44B-WF-234426

Continuation of FD-302 of ___William Patrick Syring___ , On 10/4/06 , Page ___10___

       Syring indicated that he did not save any of the e-mails that he sent to the Arab American Institute, nor did he have a "Zogby file" on his computer's hard drive.

       When asked if he had any friends who were Arabic, he stated that he had some. Syring expanded by saying his anger was directed at Zogby and those Arabs who were trying to overthrow Israel.

       Syring stated that the U.S. Department of State assigned him to Lebanon between 1993-94, as an economic officer. His duties included trade promotions and commercial activities. He had an assignment in Dubai after "9/11."

       Syring advised that he was not part of any group that expressed hatred towards Arabs. He has not visited any anti-Arab hate group website nor has he gone to any anti-Arab "chat rooms." Syring has not expressed his anger towards Zogby and Arab terrorists except to his family members.

       When asked by Agent Bristol whether he has contacted his elected officials to voice his anti-Arab sentiments, Syring stated that he might have, but he was not sure.

       Syring denied ever using the email address of ███████████████ Syring did not know who Scott M. Wilt was.

       Because of his foreign service assignments, Syring stated that he possesses a Florida's driver's license, ███████████████ which lists his address as ███████████████ Naples, Florida. That address is where his brother lives, and he (Patrick Syring) remains a registered voter there.

       At the end of this interview, Agents requested permission to conduct a "consent search" of Syring's Arlington residence, which he agreed to. Agents Bristol and Parker then left Syring's place of employment (with Patrick Syring), and drove in a FBI vehicle to Syring's residence, ███████████████. Initially, Syring stated that he did not want to sign FBI form "FD-26, Consent to Search." Syring was explained that a signature was necessary before Agents could search anything in his residence. Syring was told that his signature only meant that:

FD-302a (Rev. 10-6-95)

44B-WF-234426

Continuation of FD-302 of ___William Patrick Syring___ , On 10/4/06 , Page 11

1.) He was asked by Special Agents of the FBI to permit a complete search of his condo/town home, located at ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and his Toshiba laptop computer,

2.) That he was advised of his right to refuse consent,

3.) That he gave this permission voluntarily,

4.) That he authorized the listed Agents to take any items which they determined to be related to their investigation.

After this explanation was given, Syring signed FBI form FD-26. Agents seized Syring's Toshiba laptop computer. There were no visual signs (posters, writings, publications, etc.) of any "hate towards Arabs" in any part of Syring's residence.

Before leaving Syring's residence, Agent Parker gave Syring one copy of FBI form FD-597 (property receipt), reflecting that the FBI received the following items from him:

One Toshiba laptop computer (Satellite), serial #24120350.

Syring was provided with an original "Target Letter," dated 10/4/06, signed by Assistant United States Attorney Julieanne Himelstein, directing him to appear at her office on 10/11/06.

Syring refused a ride back to his office, indicating that he wished to return to work on the Metro Rail.