IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 07-204 (CKK) |
| ) | |
| PATRICK SYRING, ) | |
| ) | |
|       **Defendant** ) | |

### DEFENDANT'S MOTION TO COMPEL PRODUCTION OF
### GRAND JURY MINUTES

Defendant, Patrick Syring, by and through undersigned counsel, respectfully moves the Court for an Order to Compel the Production of Grand Jury Minutes so that he may file a motion to dismiss the indictment in the above-captioned case. As grounds for the motion, Mr. Syring states as follows:

**I.      Factual Background**

As the Court is aware, the Indictment charges Patrick Syring with two crimes based solely on his alleged communications to six employees of the Arab American Institute ("AAI"). Indictment at ¶ 1 - 10.  The AAI is a private, non-profit interest group that represents the interests of Arab Americans in the United States.  *Id.* at ¶ 1.  Its offices are in the District of Columbia. *Id.*  Mr. Syring resides in Arlington, Virginia.  *Id.* at 3.

This case was investigated and indicted jointly by prosecutors from the Department of Justice Civil Right's Section and the United States Attorney's Office for the District of Columbia.  Apparently, one of the Department of Justice prosecutors, Barry Kowalski, had some type of advisory relationship with persons from the AAI.   The grand jury material that has been provided to date has many examples of how Mr. Kowalski was deeply intertwined with persons

from the AAI. Indeed, as the Court is aware, Mr. Kowalski is no longer a member of the government's trial team in this matter.

Upon information and belief, Mr. Kowalski was removed either because the government realized that there was a potential conflict given the way Mr. Kowalski and the witnesses interacted in the grand jury, or that they realized he may be called as a potential defense witnesses in the case, given his pre-grand jury interactions with, and advice to, AAI employees, including – at least with regard to one such employee – whether Mr. Syring's comments constituted a "threat." Whatever the reason, Mr. Syring believes that Mr. Kowalski's interactions with the grand jury tainted the proceedings and he will be filing a motion to dismiss the indictment based on the taint.

There are a number of very troubling pieces of testimony that were revealed during the grand jury investigation that illustrate how the proceedings were tainted. They are as follows:

- As a general matter, the government elicited testimony that Mr. Kowalski spoke directly with a number of grand jury witnesses, who directly reported the contacts allegedly made by Mr. Syring in this case to Mr. Kowalski. These references served to give an air of credibility to the government's theory of the case concerning these so-called threatening communications. Mr. Kowalski went out of his way to interject himself into the grand jury process. An example of this is set forth in grand jury testimony of an AAI employee, Rebecca Brown, at page 13.

    **By Mr. Kowalski**:

    Q. Had you previously had – had you and I previously had conversations about threatening e-mails and messages Dr. Zogby received?
    A. Yes.

    Q. And additionally, had you previously sent to me e-mails that you thought the Department of Justice should see?

    A. Yes.

    Q. And so I was your contact in the Department of Justice for your organization?

    A. Yes. Yes.

    Q. And would you estimate about how many e-mails or other kind of communications ever since 9-11 that you felt it was necessary to send to me?

    A. I would say maybe 15 and 20.

    Q. Okay. And some of those resulted in – do you know whether some of those resulted in prosecutions?

    A. Yes, I do know some of them did.

    Q. So some of them were threatening and some weren't?

    A. Yes.

Setting aside the inappropriate nature of the leading questions by Mr. Kowalski, it is clear that Mr. Kowalski's intentions were to get the grand jurors to conclude that since the communications at issue in this case were being presented for prosecution, that they were threatening. Mr. Kowalski's actions were clearly improper in this regard.

- Rebecca Brown claimed that she did not know whether the words allegedly written or uttered by Mr. Syring constituted threats. She consulted with Mr. Kowalski to determine whether they were. *See* Grand Jury testimony of Rebecca Brown at page 8. This testimony is concerning for a variety of reasons. First, the implication to the grand jury was that the remarks were indeed threatening because Mr. Kowalski had placed the witness before the grand jury to testify about the communications. Of course, the issue of whether the remarks constituted threats should have been left to the grand jurors. Second, since Ms. Brown did not perceive the words uttered or read to be threatening herself, it was improper for Mr. Kowalski to advise her that the

words constituted threats.  Mr. Syring must have access to all legal instructions given by the government and Mr. Kowalski to the grand jury to see whether they were properly advised.

- Mr. Kowalski apparently defined the term "bodily harm level" to Ms. Brown in the grand jury.  Mr. Syring must know how Mr. Kowalski defined that term or whether any of the grand jurors were instructed on the meaning of that term.

- Mr. Kowalski and witnesses discussed the fact that he and the Department of Justice prosecuted other individuals for sending so-called harassing messages to the AAI and its employees.  *See, e.g.,* Grand Jury testimony of James Zogby at page 16.  It was improper for the grand jury to consider Mr. Kowalski's prior interactions with the AAI in other cases.  Indeed, this testimony, when considered in conjunction with the testimony of Ms. Brown, usurped the grand jury's role of determining whether the words allegedly communicated constituted threats.  Mr. Kowalski's efforts served to impermissibly prejudice the grand jury's consideration of the evidence.

The material cited above is disturbing.  Of course, one would not expect to see these kinds of references in a grand jury investigation.  It is likely that there are additional inappropriate or incorrect assertions in the factual record that led to the indictment in this case.  As such, it is critical that Mr. Syring have access to materials normally covered by Rule 6(e) of the Rules of Criminal Procedure.

As the Court is aware, prosecutors have an enormous amount of power and influence over grand jury proceedings.  Prosecutors often speak to grand jurors or answer questions of grand jurors during times in which witnesses are not present.  Of course, those dialogues are

never transcribed and disclosed publicly. Here, there is a particularized need for Mr. Syring to have access to these materials.

## II. Legal Authority

In order to lift the "veil of secrecy" surrounding grand jury proceedings, a movant must demonstrate the existence of a "particularized need" for disclosure that outweighs the general rule of grand jury secrecy. *Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 220-23 (1979). The standard is "a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 445 (1983).

Rule 6(e)(3)(E) contains exceptions to the general rule of secrecy. The rule provides that:

> The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand jury matter:
>
> (i) preliminarily to or in connection with a judicial proceeding;
>
> (ii) at the request of the defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grant jury[.]

## III. Analysis

In this case, we respectfully submit that a particularized need exists for disclosure of the grand jury minutes concerning the prosecution of Mr. Syring. First, we have cited at least four significant references to matters that illustrate that Mr. Kowalski's actions in this case were not proper. Second, Mr. Kowalski spoke to at least one witness who was not sure whether the words she heard constituted threats. He defined that term for the witness and the grand jury. Mr. Syring has a right to know whether his instruction was proper. This is especially so, since Mr. Kowalski deliberately injected himself into the proceedings on page 13 of Ms. Brown's

transcript. As a result, he improperly vouched for the threatening nature of any communications allegedly made by Mr. Syring. This, as the Court knows, is the *central* issue in this case.

Rule 6(e) specifically provides that the Court, in exercising its discretion, can order the disclosure of the material sought if it would assist the defense in filing a motion to dismiss the indictment. Mr. Syring has clearly demonstrated, based on the detailed factual record above, that a particularized need for production of the material exists. As such, we respectfully ask the Court to grant the relief requested.

WHEREFORE, the Defendant respectfully requests that this Motion be granted.

Dated this 14th day of December, 2007.

>Respectfully submitted,
>
>SCHERTLER & ONORATO, L.L.P.
>
>_____/s/_____
>David Schertler (#367203)
>Danny Onorato (#480043)
>Peter V. Taylor (#419524)
>601 Pennsylvania Avenue, NW
>North Building, 9th Floor
>Washington, DC 20004
>Telephone: (202) 628-4199
>Facsimile: (202) 628-4177
>
>*Counsel for Mr. Patrick Syring*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | Criminal No. 07-204 (CKK) |
| ) | |
| **PATRICK SYRING,** ) | |
| ) | |
| **Defendant** ) | |

**[PROPOSED] ORDER**

BASED UPON the Defendant's Motion to Compel Production of Grand Jury Minutes, and the government's response thereto, and being familiar with the file and the relevant law, the Court hereby

FINDS THAT the Defendant has made the requisite showing of "particularized need" necessary to pierce the "veil of secrecy" that generally attends to grand jury proceedings; and the Court

FURTHER FINDS THAT the facts presented here fall under the exceptions to grand jury secrecy contained in F.R.Crim.P. 6(e)(3)(E)(i) and (ii); and, therefore,

IT IS HEREBY ORDERED THAT the government provide to the Defendant all grand jury minutes from any grand jury proceeding conducted with regard to this case on or before the _____ day of _____, 2007/2008.

Dated this _____ day of _____, 2007.

_____
HON. COLLEEN KOLLAR-KOTELLY
U.S. District Judge

cc:      Julieanne Himelstein, Esq.
           Assistant United States Attorney
           Federal Major Crimes Section
           United States Attorney's Office
                for the District of Columbia
           555 Fourth Street, NW, 4th Floor
           Washington, DC 20530

           Mark Blumberg, Esq.
           Special Litigation Counsel
           Karen Ruckert, Esq.
           Trial Attorney
           Civil Rights Division
           601 D Street, NW, Fifth Floor
           Washington, D.C.  20004

           David Schertler, Esq.
           Peter V. Taylor, Esq.
           601 Pennsylvania Avenue, NW
           North Building, 9th Floor
           Washington, DC 20004