THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. : 07-204 (CKK)** |
| | : | |
| **v.** | : | |
| | : | |
| **PATRICK SYRING,** | : | |
| Defendant. | : | |
| | : | |
| | : | |

## GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION REQUESTING STATUS HEARING REGARDING DEFENDANT'S CONDITIONS OF RELEASE

The United States, by its undersigned counsel, respectfully replies to defendant's Response to the Government's Motion Requesting Status Hearing Regarding Defendant's Conditions of Release.

First, statutory authority, as interpreted in case law, clearly confers upon the Court the power to create and enforce the special condition of release set forth in the September 3, 2009 order. Second, even given the factual representations in defendant's response, the Court should find that defendant willfully violated its order by sending the letter to C.B.

The starting point for addressing the inquiry set forth in the Court's May 6, 2010 minute order should not be the general contours of the First Amendment, as articulated in defendant's response, but its application in the context of supervised release. As set forth below, courts have consistently held that release conditions of probation may limit the fundamental rights of the person under supervision, including First Amendment rights. Thus, as shown herein, the release

1

condition set by the Court for defendant's communications with the victims falls well within the scope of restrictions held to be constitutional.

As the Supreme Court has consistently recognized, conditions of probation and supervised release may restrict a defendant's constitutional rights. *C.f. United States v. Gall*, 552 U.S. 38, 48 (2007) (stating, in the context of probation, that "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty'); *United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.") (internal citation omitted).

The Court's authority to issue the release condition in this matter arises from 18 United States Code § 3583. After setting forth certain mandatory conditions of supervised release, including that the defendant not commit another crime while on release and submit to drug testing, the statute provides, in relevant part, that:

> The court may order, as a further condition of supervised release, to the extent that such condition–
>
> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)©, and (a)(2)(D);
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)©, and (a)(2)(D); and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);
>
> any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate . . . .

2

18 U.S.C. § 3583(d). Among the discretionary conditions enumerated in 18 U.S.C. § 3563, which addresses probation and is cross-referenced in § 3583(d), are that "the defendant must refrain from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances"; that the defendant "must reside in a specified place or area"; that the defendant refrain from possessing a firearm; and "such other conditions as the court may impose."
18 U.S.C. § 3563(b)(5), (b)(8), (b)(13), & (b)(22).

Section 3583 thus also incorporates 18 U.S.C. § 3553(a)'s requirements that the court should consider "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), and "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," § 3553(a)(2); *accord United States v. Sullivan*, 451 F.3d 884, 895 (D.C. Cir. 2006) ("In applying these standards, sentencing judges are afforded wide discretion when imposing terms and conditions of supervised release.") (internal citation omitted).

With respect to First Amendment rights, courts have affirmed conditions of supervised release that present far broader restrictions upon a defendant's rights of freedom of speech and association than those placed upon defendant Syring. In *United States v. Turner*, 44 F.3d 900, 903 (10th Cir. 1995), for example, the Tenth Circuit affirmed a condition of probation that the

defendant, who was convicted of obstruction of a federal court order in violation of 18 U.S.C. § 1509 arising from trespassing in protest at abortion clinic, must not "harass, intimidate, or picket in front of any gynecological or abortion family planning services center" and rejected the defendant's argument that such a condition violated her First Amendment rights. *Id*. at 903. In so doing, the court observed that:

> Incidental restrictions of First Amendment rights to freedom of speech and association are permissible if reasonably necessary to accomplish the essential needs of the state and public order. *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972). Courts have consistently upheld imposition of conditions of probation that restrict a defendant's freedom of speech and association when those conditions bear a reasonable relationship to the goals of probation. *Cf. Porth v. Templar*, 453 F.2d 330, 334 (10th Cir.1971) (within discretion of trial court to restrict the probationer's association with "groups that would palpably encourage him to repeat his criminal conduct"); *see also United States v. Bortels*, 962 F. 2d 558, 560 (6th Cir.1992) (per curiam); *United States v. Showalter*, 933 F.2d 573, 575-76 (7th Cir. 1991); *Malone v. United States*, 502 F.2d 554, 556-57 (9th Cir.1974), cert. denied, 419 U.S. 1124, 95 S. Ct. 809, 42 L.Ed.2d 824 (1975).

*Id.* Finding that the restrictions on the defendant "[bore] a reasonable relationship to the goal of her probation," 44 F.3d at 903, the *Turner* court continued by stating that, "[g]iven her deeply held convictions regarding abortion, it is not fantastic to speculate that if she were permitted to protest at abortion clinics, she might not be able to restrict her activities within lawful parameters. In order to help insure [the defendant] does not repeat her criminal conduct, the district court did not abuse its discretion by imposing this condition as a term of her probation." *Id.* Similarly, in *United States v. Byrd*, 124 F.3d 667, 685 (5th Cir. 1997), the Fifth Circuit upheld a condition of release for a defendant convicted under 18 U.S.C. § 248(a)(1), the Free Access to

Clinic Entrances Act, for threatening to kill a physician who provided abortions. The release condition at issue required the defendant to "stay at least 1000 feet away from abortion clinics, specifically the America's Women Clinic." *Id.* at 684. Noting that the district court found the restriction to be "reasonably necessary to prevent the defendant from repeating the activity for which he was convicted," and that "the defendant's conviction for violent activity constituted a sufficient governmental interest to justify a temporary limitation on [the defendant]'s Fundamental Rights," the Fifth Circuit found the restriction proper under § 3583(d). *Id.* at 684-85.

Courts have upheld further release conditions restricting First Amendment protections of freedom of speech and association that have also encompassed political speech. In *United States v. Hughes*, 964 F.2d 536 (6th Cir. 1992), the Sixth Circuit validated a release condition prohibiting a former labor union official convicted of violating federal tax and false statement statutes from exercising "any decision-making authority over any organization, committee, or account that receives any of its funds from a labor organization and/or its members for the purposes of contributing money to political candidates." *Id*. at 542-43. Observing that "[a] district court may include conditions that restrict fundamental rights, such as freedom of speech and freedom of association, although in such cases we must review the restrictions with particular care," and that "[p]robation restrictions may affect fundamental rights such as freedom of speech and freedom of association if the conditions are primarily designed to meet the ends of rehabilitation and protect the public," the court found that the restriction "was reasonably fashioned . . . to protect union members and the general public from continued abuses by [the defendant]." *Id.* at 542. The court also opined that "[a]n incidental effect of this restriction is

that it will also rehabilitate [the defendant] by removing him from the environment that originally led to his criminal activity." *Id*. The court further stated,

> Admittedly, [the defendant's] ability to exercise his right to associate with political action committees and to participate in an activity in which union members have contributed in their individual capacities is limited by the court's order. However, we find this limitation on [the defendant's]' First Amendment rights to be necessary when balanced against the right of the community to have uncorrupted union financing of political action committees.

*Id.* at 543. Moreover, following a recitation of facts indicating that the defendant continued to interfere with the political action committee following sentencing, *id.* at 537-38, the court observed in validating the release condition that "Hughes' conduct following his first sentencing clearly demonstrates that he is still a threat to the public in this regard." *Id.* at 543.

The Ninth Circuit affirmed a release condition placing significant restrictions upon the First Amendment rights of a defendant convicted of making a false statement or representation regarding the acquisition of a firearm in violation of 18 U.S.C. § 924(a)(1)(A) in connection with the sale of a firearm in a white supremacist online community. *United States v. Ross*, 476 F.3d 719, 722-23 (9th Cir. 2007). The section of the district court's order at issue provided: "You shall not associate with known neo-Nazi/white supremacist members, known neo-Nazi/white supremacist affiliates, or any other organization that advocates engaging in criminal activity or overthrowing the United States government. In addition, you shall not possess neo-Nazi/white supremacist paraphernalia." *Id.* at 721. Noting that "[s]pecial conditions 'may seek to prevent reversion into a former crime-inducing lifestyle by barring contact with old haunts and associates, even though the activities may be legal," the court held the condition valid. *Id.* at

722-23 (internal citations omitted). The court identified several cases as precedent:

> We have frequently permitted restrictions on supervised release that infringe on fundamental rights, including First Amendment rights. *See, e.g.*, *United States v. Rearden*, 349 F.3d 608, 619-21 (9th Cir.2003) (upholding restrictions on possessing or using computer with Internet access and possessing material depicting sexually explicit conduct); *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir.1998) (upholding restrictions on contact with children and possession of sexually stimulating material); *United States v. Bolinger*, 940 F.2d 478, 480-81 (9th Cir.1991) (upholding condition prohibiting participation in activities or membership of motorcycle clubs); *Malone v. United States*, 502 F.2d 554, 555-57 (9th Cir.1974) (upholding restrictions on participating in any American Irish Republican movement, from belonging to any Irish organization, and from visiting Irish pubs).

*Id.* at 721. The Ninth Circuit also cited with approval a similar decision by the Seventh Circuit in *United States v. Showalter*, 933 F.2d 573 (7th Cir. 1991). *Showalter* affirmed the constitutionality of a release condition that the defendant, who was convicted of possession of an unregistered firearm, "shall not participate in, or associate with those who do participate in, the organization known as 'skinheads', or in any neo-Nazi organization." *Id.* at 574. In *Showalter*, the court "conclude[d] the district court was correct that [defendant] "needs to be separated from other members of white supremacist groups to have a chance of staying out of trouble," and was therefore valid under § 3583(d). *Id.* at 575-76.[1]

As illustrated by the case law cited above, the Court's supervised release condition

---

[1] No case law of this circuit appears to be inconsistent with the cases cited above, *e.g.*, *United States v. Russell*, 600 F.3d 631 (D.C. Cir. 2010) (applying § 3583 in finding substantively unreasonable a 30-year prohibition on the defendant's use and possession of computers; finding that the restriction was more severe than necessary to prevent defendant from repeating his offense and would interfere with his rehabilitation by inhibiting his professional development).

prohibiting defendant from communicating with the victims falls well inside the requirements of § 3583(d) and is therefore constitutional. Indeed, the restriction placed upon defendant Syring – that he have no contact with Dr. Zogby, the Arab American Institute (AAI), or any current or former employee of AAI, including through third parties – is dramatically less constraining than the release conditions discussed above. As the Court has observed, the nature and circumstances of defendant's offense of conviction, in issuing repeated threats to AAI employees, and his demonstrated history of continuing to seek to intimidate and interfere with AAI in violation of the Court's release conditions, required a further clarification that he be prevented from communicating with AAI and Dr. Zogby directly or indirectly through third parties. In addition, such a restriction also promotes respect for the law, in that it responds to defendant's attempts to circumvent the Court's orders. It also could further the aim of the defendant's rehabilitation by allowing him the opportunity to focus his efforts on topics other than repeated attempts to communicate with AAI and Dr. Zogby. Finally, the restriction operates to protect the public from further crimes of the defendant, including the victims in this case, who should not experience continued manipulation and disruption from a defendant still under the Court's supervision as he serves a sentence for threatening, intimidating, and interfering with them on the basis of their race and national origin.

Further, the Court's condition of release "involves no greater deprivation of liberty than is reasonably necessary" to accomplish these purposes. As noted in the government's motion, the Court clarified the no-contact restriction to include third parties only after the defendant actually sought to communicate with Dr. Zogby and AAI through a third party. The order was therefore crafted with the most narrow possible restriction on the defendant's communications that is

possible in order to address defendant's evolving conduct and maintain the force of the no-contact provision. Indeed, a more clear or more narrowly drafted restriction is difficult to conceptualize.

The narrow scope of the Court's release condition to accomplish its purposes is further illustrated when it is compared to the release conditions limiting First Amendment rights that courts have affirmed, as discussed above. Indeed, such restrictions are dramatically more confining than that imposed by the Court. Whereas the restrictions upheld in *Turner* and *Byrd* prevented a defendant from harassing, intimidating, and/or approaching *all* abortion clinics, rather than only the clinic that was the victim of the defendant's conduct, the restriction in this case affects the defendant's conduct only as it applies to AAI and Dr. Zogby. Further, the limitation set by the Court is significantly less than that affirmed in *Hughes*, which stripped a defendant of decision-making authority over any organization that received funds from a labor organization or its members for the purposes of contributing money to political candidates. It is also far less stringent than the release conditions affirmed in *Ross* and *Showalter*, which prohibited defendants from associating with white supremacist or skinhead groups (and, in the case of *Ross*, prohibiting the defendant from possessing paraphernalia related to such groups) – notably even when their offenses of conviction did not relate to a crime on the basis of race or national origin. In this case, defendant faces no restriction whatsoever on possessing anti-Arab literature or associating with groups that share anti-Arab views.

Accordingly, the Court should find that the release condition prohibiting defendant from contacting the victims, even if through a third party, is an valid exercise of the Court's power under the statutory provision governing conditions of supervised release.

Given the above, and accepting as true the factual representations in defendant's response, the Court should find that defendant willfully violated its order by sending the letter to C.B. Defendant concedes that he received no authorization from the probation officer permitting him to send the letter to C.B. His assertion that he believed he had "implied consent" because the probation officer did not act on the C.B. letter is belied by the fact that he waited until he had the probation officer's affirmative consent before sending the letter to H.R.B., just a few weeks prior. Defendant sets forth no contours of any such agreement, including any agreed-upon waiting period during which the probation officer could review any proposed communication and offer feedback to defendant as required by the Court's orders. More importantly, defendant does not dispute that the letters to H.R.B. and C.B. closely parallel, in context and in language, his April 30, 2009 letter to A.L., which was the very basis upon which the Court issued its September 3, 2009 order. Thus, defendant, a highly educated person well capable of comprehending the Court's orders, was clearly on notice that such a communication would violate his release condition. Further, defendant's crafting of these letters to condemn the recipient for participating in an event sponsored by AAI, yet completely avoiding a mention of AAI or Dr. Zogby by name, appears calculated to avoid triggering the awareness of the probation officer that the letter was an attempt to communicate with the victims through a third party as prohibited by the Court's order. Syring's clear intent in issuing the letters to H.R.B. and C.B. was to communicate a message to Dr. Zogby and AAI, and he succeeded in doing so. Based upon these facts, the Court should find that defendant knowingly violated his condition of release.

In light of defendant's recent conduct, in the event the court determines not to revoke the defendant's release, the government further submits that the Court should eliminate from its

order setting release conditions the requirement that the probation officer review defendant's communications concerning AAI or Dr. Zogby. Instead, the court should simply maintain the flat prohibition on all communication, in any matter, directly or indirectly through third parties, with AAI, employees of AAI whether current or former, including Dr. Zogby. The review is not constitutionally required, given the court's already narrow fashioning of the no-contact provision in accordance with section 3583's authority, as discussed above. Further, the review condition appears to have proven unworkable, in that defendant has succeeded in working around this system by transmitting communications to third parties whom he knew had an association with AAI, with very real consequences as described in the government's motion.

This pattern of defendant's conduct appears to persist. On approximately April 29, 2010, defendant submitted for review by the probation officer a communication to a business that broadcasts the television program "Viewpoint with James Zogby." The communication condemned the business for supporting broadcasting the program, and again without mentioning AAI or Dr. Zogby by name such that the connection to the victims is not easily seen. Only by visiting the recipient's website and looking at the broadcast schedule is the connection to AAI and Dr. Zogby apparent upon review. Further, the circumstances of the communication closely parallel defendant's March 2008 communication with LinkTV, which was the catalyst for the court's order revoking the defendant's presentence release conditions as discussed in the government's motion, and even concerns the same television program. Given the subtlety of defendant's repeated attempts to communicate with AAI and Dr. Zogby through third parties, and the high volume of communications he sends to the probation officer for review, the administration of the review condition consistent with the no-contact provision has proven

11

unworkable, with the very real consequences described in the government's motion. Accordingly, defendant should simply be required to comply with the court's no-contact provision on his own, as he should be capable of doing.

    WHEREFORE, the United States respectfully requests that this Honorable Court hold a hearing to determine whether the letter to C.B. violated defendant's conditions of release. In the event the Court finds by a preponderance of the evidence that defendant has violated his release conditions, the United States will request that the Court revoke defendant's supervised release and require him to serve the remainder of his sentence in prison, pursuant to 18 U.S.C. § 3583(e)(3).

Dated this 24th day of May, 2010.

                          Respectfully submitted,

                          /s/Ronald C. Machen Jr.
                          Ronald C. Machen Jr.
                          UNITED STATES ATTORNEY

By:    /s/ Julieanne Himelstein
        Julieanne Himelstein
        Assistant United States Attorney

            /s/ Thomas E. Perez
        Thomas E. Perez
        ASSISTANT ATTORNEY GENERAL
        CIVIL RIGHTS DIVISION
        U.S. DEPARTMENT OF JUSTICE

By:    /s/ Mark Blumberg
        Mark Blumberg
        Deputy Chief, Criminal Section

By:    /s/ Karen Ruckert
        Karen Ruckert
        Trial Attorney, Criminal Section